


IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT
OF PENNSYLVANIA

FRANCISCO PEREIRA, on behalf of    :
himself and all others similarly   :
situated,                          :
                                   :
              Plaintiff,           :        CIVIL ACTION
                                   :
     v.                            :        No. 07-cv-2157
                                   :
FOOT LOCKER, INC.; DOES 1 through  :
10, inclusive,                     :
                                   :
              Defendants.          :

FILED

MICHAEL KUNZ, Clerk
Dep. Clerk

## MEMORANDUM and ORDER

Joyner, J.                              September  11  ,2009

Before this Court are Plaintiff's Motion for Conditional

Collective Certification pursuant to 29 U.S.C. § 216(b) (Doc. No.

53), Plaintiff's Motion for Class Action Certification pursuant

to Fed. R. C. P. 23 (Doc. No. 50), Defendant's Response in

Opposition (Doc. No. 66), Plaintiff's Reply (Doc. No. 85),

Defendant's Surreply (Doc. No. 89), Plaintiff's Rebuttal

Memorandum (Doc. No. 93), Plaintiff's Notice of Filing

Supplemental Evidence (Doc. No. 100) and Defendant's Response to

Plaintiff's Second Notice of Filing Supplemental Evidence (Doc.

No. 103).

## Background

Plaintiff filed this action in the Eastern District of

1

Pennsylvania on May 25, 2007, alleging that Defendant Foot
Locker,[1] had violated the Fair Labor Standards Act ("FLSA"), 29
U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act of 1968
("PMWA"), as amended 43 Pa. C. S. C. § 333.101, *et seq.*, and the
Pennsylvania Wage Payment and Collection Act ("PWPCA"), 43 Pa. C.
S. A. § 260.1, *et seq.*, by not compensating workers for hours
worked and not compensating for overtime.  Generally, Plaintiff
alleges that Defendant has a central policy of strictly enforcing
restricted hours budgets that are not adequate to do the work of
the store.  Specifically, Plaintiff alleges that time spent pre-
opening and post-closing, doing necessary work for the
maintenance of the store, is not compensated and employees are
required to work off-the-clock or have their time shaved in order
to do this work.  Plaintiff alleges that Defendants enforced the
policy by directly tying the compensation of the store managers
to meeting the unrealistic labor budget set by Foot Locker
corporate and by punishing managers for "going over" the
insufficient budget.  Defendant vigorously denies the
allegations.

    Plaintiff Pereira formerly worked at numerous Foot Locker
stores under four different managers.  In his declaration, he
attests that he was not compensated for pre-opening and post-

---

[1]Defendant Foot Locker, Inc., includes stores branded "Foot Locker,"
"Lady's Foot Locker," "Kid's Foot Locker," and "Foot Action."

closing work because his manager was forced to stay within his restricted labor budget. Plaintiff's Complaint alleges both federal and state violations as follows: Count I: Failure to pay Plaintiff and each member of the nationwide class for all hours worked and failure to pay overtime compensation in violation of FLSA, 29 U.S.C. §§ 206, 207; Count II: Failure to compensate Plaintiff and each member of the nationwide class for all time worked off-the-clock and for shaved time, at a rate at least equal to the federal minimum wage; Count III: Failure to pay Plaintiff and each member of the Pennsylvania class for all of hours worked in violation of 43 P.S. § 333.104(a); Count IV: Failure to pay overtime to Plaintiff and each member of the Pennsylvania class in violation of 43 P.S. §333.104() and 34 Pa. Code § 231.41; Count V: Failure to pay Plaintiff and all members of the Pennsylvania class all wages due to them as required by Pennsylvania Labor Laws, in violation of 43 P.S. § 260.3 and 43 P.S. § 260.5. Plaintiff has pled jurisdiction for the FLSA claims under 28 U.S.C. § 1331 and under 28 U.S.C. §1367 for the state law claims. Three additional Plaintiffs have filed declarations opting-in to the action.

Discovery has been active in the case and Plaintiff has provided the Court with declarations, time sheets, sales records, internal complaints, internal documents and depositions. In its defense, Foot Locker has challenged Plaintiff's evidence with

3

numerous declarations of putative plaintiffs who claim never to
have worked off-the-clock or had their time shaved, as well as
evidence of company policies, records of discipline, and time
sheet evidence refuting that of the Plaintiff.  The present
Motions for Conditional Collective Certification and Class Action
Certification were filed in September 2008, and parties have
continued to submit briefs, declarations and evidence in the
matter, with and without the Court's leave, through July 20,
2009.

**Standard**

**Conditional Collective Certification**

As Plaintiff has moved for conditional collective
certification under FLSA, it is this Court's "managerial
responsibility to oversee the joinder of additional parties to
assure that the task is accomplished in an efficient and proper
way."  Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170-171
(1989).  "The Court has the power to authorize notice in
collective actions in order to set time limits for various pre-
trial steps and to avoid a multiplicity of duplicative suits."
Lugo v. Farmer's Pride, No. 07-0749, 2008 U.S. Dist. LEXIS 17565,
at *6-7, 2008 WL 638237 (E.D. Pa. March 7, 2008) (citing Hoffman-
LaRoche, 493 U.S. at 171-173).  Actions brought under the FLSA
are collective actions, and "[n]o employee shall be a party
plaintiff to any such action unless he gives his consent in

4

writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).

Pursuant to the FLSA, there are two requirements for potential plaintiffs to be included in the collective action: plaintiffs must (1) be "similarly situated" and (2) give written consent.  29 U.S.C. § 216(b).  Courts engage in a two-step inquiry to determine whether class members are similarly situated for purposes of Section 216(b) of the FLSA.  <u>Harris v. Healthcare Servs. Group, Inc.</u>, No. 06-2903, 2007 U.S. Dist. LEXIS 55221, at *6, 2007 WL 2221411 (E.D. Pa. July 31, 2007) (citations omitted). The first step is assessed early in the litigation process when there is minimal evidence and places a relatively light burden on plaintiffs to show that potential opt-in plaintiffs are "similarly situated."  <u>Id.</u>; <u>Smith v. Sovereign Bancorp, Inc.</u>, No. 03-2420, 2003 U.S. Dist. LEXIS 21010, at *10, 2003 WL 22701017 (E.D. Pa. Nov. 13, 2003).  When discovery is complete, a more fact-specific second-stage inquiry occurs into whether the proposed opt-in class is, indeed, similarly situated.  <u>Id.</u>

The FLSA does not define the term "similarly situated" and neither the United States Supreme Court nor the Third Circuit provide direct guidance on determining whether potential class members are similarly situated.  In the absence of definitive precedent, district courts in the Third Circuit have developed a two-stage test.  <u>Bishop v. AT&T Corp.</u>, 256 F.R.D. 503, 507 (W.D.

Pa. 2009) (citing Kronick v. Bebe Stores, No. 07-4514, 2008 U.S.
Dist. LEXIS 78502, at *1, 2008 WL 4546368 (D.N.J. Oct. 2, 2008)).
However, courts in our Circuit differ as the requirements of the
first stage.  "Some courts have determined that plaintiffs need
merely allege that the putative class members were injured as a
result of a single policy of a defendant employer." Bosley v.
Chubb Corp., No. 04-cv-4598, 2005 U.S. Dist. LEXIS 10974, at
*7-9, 2005 WL 1334565 (E.D. Pa. June 3, 2005) (citing Goldman v.
RadioShack, No. 03-cv-0032, 2003 U.S. Dist. LEXIS 7611, at *27,
2003 WL 21250571 (E.D. Pa. Apr. 16, 2003); Felix de Ascencio v.
Tyson Foods, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001); Sperling
v. Hoffman-La Roche, 118 F.R.D. 392, 407 (D.N.J. 1988), aff'd on
other grounds, 862 F.2d 439 (3d Cir. 1988), aff'd, 493 U.S. 165
(1989)).  While, "[o]ther courts have applied a stricter,
although still lenient, test that requires the plaintiff to make
a 'modest factual showing' that the similarly-situated
requirement is satisfied." Bosley, 2005 U.S. Dist. LEXIS 7611,
at *8-9 (citing Dybach v. Florida Dep't of Corrections, 942 F.2d
1562, 1567-68 (11th Cir. 1991); Mueller v. CBS, Inc., 201 F.R.D.
425, 428 (W.D. Pa. 2001); Harper v. Lovett's Buffet, Inc., 185
F.R.D. 358, 362 (M.D. Ala. 1999); Jackson v. New York, 163 F.R.D.
429, 431 (S.D.N.Y. 1995)).

Defendant urges this Court to perform a combined first and
second stage certification analysis due to the amount of

6

discovery that has taken place.  At this point in the litigation,
Plaintiff has provided his own declaration, as well as three
others of opt-in Plaintiffs Andre Moore, Matthew Knighton, and
Jennifer Hill.  Williams Decl., Exhs. G, H, I, J. As discovery
has been ongoing in this matter, Defendant has produced volumes
of documents that pertain to both individual employees and to
Foot Locker generally.  In its Motions and Declarations,
Plaintiff has submitted discovered time sheets, internal employee
complaints, depositions of Foot Locker employees, communications
between Foot Locker Managers and District Managers, emails
between District Managers and Foot Locker Human Resources, hours
budgets for individual stores, and a Foot Locker Manager
Reference Guide.  Plaintiff has also complied with Defendant's
discovery requests as to depositions and documents.  However,
despite its extent, discovery has not yet been completed and
notice has not been sent to putative class members.  In this
regard, discovery thus far does not constitute comprehensive
discovery in this matter.  In fact, in its Scheduling Order (Doc.
No. 23), the parties requested a status conference thirty (30)
days after this Court's ruling on the instant Motions to discuss,
*inter alia*, dates for additional discovery.  Thus, this Court is
faced with a unique situation wherein extensive discovery has
been undertaken, but has been limited to a cross section of the
universe of discovery and has not yet closed.

7

As the second stage of conditional certification typically requires a "full factual record," we decline to eliminate the second stage of this two-stage process and perform the full analysis at this time.  Ingram v. Coach USA, Inc., 2008 U.S. Dist. LEXIS 5935, at *14-16, 2008 WL 281224 (D.N.J. Jan. 28, 2008) (analyzing the motion for conditional certification under the first stage even though depositions, affidavits, declarations and other documents had been provided); Bishop, 256 F.R.D. at 507 (using the first stage of the two-stage test even though discovery had progressed); but also, Basco v. Wal-Mart, Inc., No. 00-3184, 2004 U.S. Dist. LEXIS 12441, at *13-14, 2005 WL 1497709 (E.D. La. July 2, 2004) (performing first and second stage analysis together after close to four years of related litigation, live testimony as to certification and six amendments to the Complaint).  While we agree that discovery is beyond its initial stages, we do not find that enough discovery has been performed to justify a second step inquiry when the discovery up to this point represents a fraction of what would constitute full discovery in this matter.  We do find, however, that due to the amount of discovery in the present matter, it is more appropriate to evaluate the conditional collective certification motion under the stronger "modest factual showing" standard.  Bishop, 256 F.R.D. at 507.

At this first stage, "Plaintiffs must show a 'factual nexus

between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.'" <u>Bouder v. Prudential Fin., Inc.</u>, No. 06-4359, 2008 U.S. Dist LEXIS 25103, at * 7, 2008 WL 3396303 (D.N.J. March 27, 2008) (quoting <u>Herring v. Hewitt Assocs., Inc.</u>, No. 06-267, 2007 U.S. Dist. LEXUS 53278, 2007 WL 2121693, at *3 (D.N.J. July 27, 2007) (citations omitted)).  The court inquires into whether "the plaintiff's proposed class consists of similarly situated employees who were collectively, 'the victims of a single decision, policy, or plan . . . .'" <u>Lugo</u>, 2008 U.S. Dist. LEXIS 17565, at *6 (quoting <u>In Ruehl v. Viacom</u>, 500 F. 3d 375, 388 (3d Cir. 2007)).  The merits of Plaintiff's claims do not need to be evaluated at this stage in order for notice to be approved and sent out to proposed conditional collective action members; this Court evaluates only whether the Plaintiffs are similarly situated.  <u>Lugo</u>, 2008 U.S. Dist. LEXIS 17565 at *9; <u>Harris</u>, 2007 U.S. Dist. LEXIS 55221, at *3.  It should be emphasized, however, that though the test requires a "modest factual showing," it is "nevertheless[,] an extremely lenient standard." <u>Parker</u>, 2008 U.S. Dist. LEXIS 74896, at *5; <u>Smith</u>, 2003 U.S. Dist. LEXIS 21010, at * 1.  Thus, this Court will conduct a first stage conditional certification inquiry as to whether Pereira and opt-in Plaintiffs are similarly situated with respect to the proposed class.

Discussion

I. Conditional Collective Certification

A. Plaintiff's Proposed Conditional Collective Class and Foot Locker's Alleged Policy

Plaintiff argues that the proposed class[2] is similarly situated and should consist of

> All persons, who are/were employed as Retail Employees, excluding persons with the title of "Assistant Manager," with the Company; (ii) are/were not paid for all the hours worked in a given workweek; (iii) are/were not paid overtime compensation at a rate not less than one and one-half times their regular rate for each hour worked beyond forty (40) hours during a work week; and (iv) chose to opt in to this action (the "National Collective Class").

First, Plaintiff contends that he is similarly situated to the putative class because he worked from 2002 to 2005 and again from 2006 to 2008 as a non-exempt Retail Employee for Foot Locker at numerous stores under four managers.   Plaintiff claims in his declaration that he was routinely required to work off-the-clock at all of his work locations under multiple different managers and that his managers also regularly "shaved" his time by cutting his recorded hours worked after the fact.   Williams Decl., Exh. G.  Three additional opt-in Plaintiffs, who worked in the state of

---

[2] "Most courts, ours included, have not been methodical in their use of the terms 'class action' and 'collective action.' The result is that numerous cases about FLSA 'collective actions' use the Rule 23 term 'class action.' Here, we will quote cases that use the terms interchangeably, and we will refer to members of a 'collective action' as part of a 'class,' but we will indicate where our analysis is limited to collective actions."  In Ruehl v. Viacom, Inc., 500 F.3d 375, 379, n.3 (3d Cir. 2007).

Illinois, also state in their declarations that they were subject
to the same treatment.  Williams Decl., Exhs. H-J.  Plaintiff
alleges that this treatment was not due to a renegade manager,
but due to a Foot Locker policy that imposes strict, but
insufficient labor budget on its managers, such that hours and
overtime are regularly unpaid to retail employees who must work
off-the-clock to perform basic job functions.

        To support this FLSA class claim, Plaintiff posits that Foot
Locker is centrally organized and directed by its corporate
headquarters in New York, New York.  Additionally, Plaintiff
alleges that hours budgets are set by Foot Locker corporate and
are plainly inadequate to staff the store in the pre-opening and
post-closing tasks.  Plaintiff contends that managers who go
"over" their hours allocation were disciplined by a district
manager.  For instance, one letter submitted by Plaintiff from
Karen Santiago, district manager, to Mike Townson, a store
manager, reads, "Hours are out of control.  You have been over
target for the past 3 weeks and we spoke numerous times.  Nothing
has changed.  This will not be tolerated . . . .  Going forward,
your failure to adhere to Foot Lockers policies and standards
will lead to further disciplinary action up to and including
termination."  Williams Decl., Exh. O.  Plaintiff also contends
that corporate controls the unwritten policy because a manager's
pay depends, at least in part, on meeting these unrealistic hours

targets.  Finally, Plaintiff alleges that within Foot Locker's
electronic time keeping system (SAP Campbell timekeeping system)
it is impossible to punch in before pre-opening or punch out
post-closing, even though there is work that specifically must be
performed while the store is closed, such as vacuuming, changing
prices, cashing out, and engaging the alarm.  Under the System,
it is then the manager's responsibility to go back into the
system to account for this time for the employee.  Overall,
Plaintiff argues that Foot Locker's policy of insufficient labor
budgets strongly enforced by Foot Locker's management and used as
a tool in compensating managers, coupled with the computer
system, resulted in unpaid hours and overtime to non-exempt Foot
Locker employees.

### B. Plaintiff's Factual Support

In support of his allegation that Foot Locker has a
concerted policy, Plaintiff has submitted his own declaration of
his experience at four Foot Locker stores and three additional
declaration of opt-in Plaintiffs, as well as a great variety of
additional documentation.  First, Plaintiff points to logs from
the timekeeping system that purport to show that employees' punch
out times were altered by managers to coincide with the store
closing.  Williams Decl., Exh. VV.  Second, Plaintiff has
submitted records from Foot Locker's timekeeping system that,
Plaintiff alleges, demonstrate that many putative class members

performed thousands of sales transaction while not clocked in –
demonstrating off-the-clock work.  Williams Decl., Exh. F.
Third, Plaintiff submitted a list of complaints filed within Foot
Locker's internal system that report forced off-the-clock work
and time shaving by managers to stay within the labor budget.
Williams Decl., Exhs. W-UU.  Fourth, Plaintiff has submitted
additional individual time sheets from individual employees at
various stores that, Plaintiff alleges, show that retail
employees regularly punched out when the store was closed to
customers, but still had to closed out registers, resulting in
off-the-clock work that was never compensated.  Supp. Evid. In
Further Support, Exhs. A-F.  Fifth, Plaintiff has provided a
deposition of the Vice-President of Compensation and Human
Resource Management Systems that discusses how the hours
allotment was tied to bonuses and retention, as well as
communications from managers citing the relationship.  Williams
Decl., Exh. O, Palardy Dep., 120:13 – 121:9.  Finally, Plaintiff
submitted stern letters and other documents from Foot Locker
management to store managers who had gone over the hours budget.
Williams Decl., Exhs. O-T.  The letters, depositions as to hours
requirements, internal complaints and hours budgets from stores
nationwide support Plaintiff's allegation of a single policy.
The declarations, time sheets, a Foot Locker manual, individual
time sheets, internal complaints and communication between Foot

13

Locker employees, provide modest evidence that the alleged unwritten policy resulted in unpaid overtime for retail employees across the country. Thus, we hold that the Plaintiff has provided sufficient evidence for conditional collective certification.

## C. Defendant Foot Locker's Arguments in Opposition

Defendant contends that Pereira and the putative class are not similarly situated in their positions and that Plaintiff has not made the requisite factual showing, but has instead, relied on mere speculation. First, Defendant argues that the putative class members have a variety of different job descriptions and work in various capacities, under different managers at locations all over the country. Thus, Foot Locker argues, the putative class members have had a variety of experiences that may contradict Plaintiff's allegations and, as such, Plaintiff is not similarly situated. To illustrate this, Defendant has provided affidavits from putative class members that directly refute Plaintiff's allegations and detail the individualized circumstances of each person as to their experience with managers. "While this evidence may be significant after discovery and during step two of the process, at this stage, it does not compel us to deny preliminary certification." Bosley, 2005 U.S. Dist. LEXIS 10974, at *12-13. See also Felix De Ascencio, 130 F. Supp. 2d at 663 (finding that detailed

declarations and other information provided by Defendant was more
suitably reviewed in step two of the certification).  The
putative class consists of non-exempt Foot Locker employees,
excluding assistant managers, who allegedly bear the same titles
and duties throughout all Foot Locker stores.  William Decl.,
Exh. K, Palardy Dep. at 38:15 - 40:08, 67:15 - 70:25.   While the
hours budget for each store is different depending on its'
location and sales volume, the time keeping system is uniform
throughout the stores, corporate headquarters sets the hourly
budget for each store and headquarters monitors any overages and
communicates with managers in this regard.  See Lockhart v.
Westinghouse Credit Corp., 879 F. 2d 43 (1989) (holding that
class members in various locations did not invalidate a
collective action).  Based on these components, Plaintiff has
alleged a general policy that would have affected all non-exempt
employees, regardless of their location or exact title.  Thus, we
will reevaluate any dissimilarities in work description in the
second stage of class certification, when the impact or scope of
the alleged policy is more complete.  Kuznyetsov v. West Penn
Allegheny Health System, No. 09-0379, 2009 U.S. Dist. LEXIS
47163, at *16-17, 2009 WL 1515175 (W.D. Pa. June 1, 2009) (citing
Sperling; 826 F. 2d at 444; Bishop, 256 F.R.D. at 506, Pontius v.
Delta Financial Corporation, No. 04-1737, 2005 WL 6103189, at *3
(W.D. Pa. June 24, 2005)).

Defendant then argues that the inquiry into off-the-clock and overtime payments would be too individualized for class treatment and that Plaintiff has not identified a uniform policy, plan or scheme as required by the standard for collective certification.  Specifically, Defendant contends that each assessment of off-the-clock work or unpaid overtime would be dependant on the employee him or herself, as well as the individual manager, and not reflective of any overall policy. Defendant cites to <u>Diaz v. Electronics Boutique of America</u>, No. 04-840, 2005 U.S. Dist. LEXIS 30382, at *15, 2005 WL 2654270 (W.D. N.Y. Oct. 17, 2005), in support of this contention. However, in <u>Diaz</u>, the plaintiffs had allegedly only that "overtime work must be approved and, thus, [Defendant] had a policy of not paying for overtime work."  <u>Id.</u>  As noted by that Court, absent was any concrete assertion or detail of a uniform plan or scheme that deprived employees of overtime.  <u>Id.</u>  While Defendant in the instant case likens Plaintiff's allegations to those in <u>Diaz</u>, we cannot find the two comparable.  Plaintiff in the instant case has specifically alleged that Foot Locker had a policy of scheduling an hours budget for each store that was inadequate for the store's work to be performed, that employees were not allowed to sign in outside store hours and that manager's pay, and potentially their jobs, were dependant upon staying within the insufficient hours budget.

Defendant also heavily relies on Basco v. Wal-Mart Stores, Inc., No. 00-3184, 2004 U.S. Dist. LEXIS 12441 (E.D. La. July 2, 2004), another case outside of our Circuit involving similar allegations to the instant case where certification was denied. It should first be noted that, overall, the Court in Basco was performing a first *and* second step review of conditional certification due to completed discovery. Id. at 14. However, in singularly assessing the first step of the collective certification inquiry, the Court did find that the evidence supplied did not support the existence of a single policy or plan because it was too individualized. However, in support of its Motion, Plaintiffs in Basco had offered, in total, a Customer Service Scheduling System, affidavits from the seven Plaintiffs, testimony from five employees stating that they had worked without overtime pay and a description of the bonus incentive for store managers. Id. at 18-22. Conversely, Pereira has additionally offered an Operations manual, employee complaints of off-the-clock work from across the country, stern and direct correspondence to managers about going over the allotted hours, hours budgets for individual stores and evidence of time shaving and off-the-clock sales and cash outs from around the country. Thus, while recognizing that individual concerns may at some point be effectively raised, we find that Plaintiff has alleged and supported a cohesive policy or plan and demonstrated its

alleged consequences nationwide. Defendant's claim or defense that Plaintiffs' claims are too individualized to be litigated collectively are "relevant to determination of a stage two decertification issue after discovery has closed." <u>Bishop</u>, 256 F.R.D. at 509 n. 7. <u>See also</u> <u>Gallagher v. Lackawanna County</u>, No. 07-912, 2008 U.S. Dist. LEXIS 43722, at *28 (M.D. Pa. May 30, 2008) (" . . . [E]vidence offered by defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery during the step-two analysis, does not compel denial of conditional certification.").

Defendant also points mightily to its policies and procedures in place against off-the-clock work and time shaving to refute Plaintiff's allegations. However, in this initial stage, such policies are not dispositive of collective certification and this Court will not deny certification based on evidence of Defendant's official policy against such work. <u>Chabrier v. Wilmington Finance, Inc.</u>, No. 06-4176, 2006 U.S. Dist. LEXIS 90756, at *9, 2006 WL 3742774 (E.D. Pa. Dec. 13, 2006).

Finally, Foot Locker argues that the time sheets, punch data and sales time analysis proffered by Plaintiff are misleading and that Plaintiff has ignored "earnings data" that would refute Plaintiff's theory that sales were made after employees had punched out of the system. Defendant also offers several

explanations for the sales being clocked after an employee had punched out.[3]  While these defenses and explanations may, in fact, prove valid, we cannot find, at this stage in these proceedings, that these explanations disclaim Plaintiff's evidence of off-the-clock sales. We decline to weigh the merits of the parties' competing theories involving off-the-clock sales and cash outs at this time.  Parker, 2008 U.S. Dist. LEXIS 74896, at *5.  Similarly, Defendant argues that the internal complaints of off-the-clock work or time shaving from employees throughout the county were mischaracterized by Plaintiff and do not support collective certification.  In doing so, Defendant calculates the percentage of employees complaining of these issues to be a minuscule, one in 400, and next provides explanations for three of the complaints.  See Sinatra Dec., Exhs. S, T and G.  We agree that the number of examples cited by Plaintiff is small in proportion to the number of Foot Locker employees; however, at this stage, twenty four complaints from around the country of the exact behaviors that Plaintiff is alleging does, in conjuncture with Plaintiff's other evidence, provide further "modest" evidence of Plaintiff being similarly situated to other putative class members.[4]  We cannot discount Plaintiff's evidence of such

---

[3]Defendant claims that Plaintiff has not accounted for: transactions linked to employees not present at the time of the transaction, non-commissioned associates crediting their sales to other associates and the payroll reconciliation period.

[4]Plaintiff claims an additional three (3) complaints were filed between the original filing and the filing of the Reply Brief on March 3, 2007.

19

complaints by weighing them substantively with Defendant's
explanations and exploring the merits of the claim.

Overall, Defendant has provided volumes of evidence to rebut
Plaintiff's claims and documentation which may prove that
Defendant simply does not have the policy that Plaintiff alleges.
However, while such evidence is reviewed in assessing Plaintiff's
burden to establish that he is similarly situated, such evidence
is more appropriately substantively weighed "pursuant to a
decertification motion or a motion for summary judgment."
Harris, 2007 U.S. Dist. LEXIS 55221, at *12 (citing Bosley 2005
U.S. Dist. LEXIS 10974, at *12). Many of Defendant's arguments
and the evidence it has supplied invite this Court to wade into
credibility and merit determinations of Plaintiff's claims,
analyses improper for this stage in the proceedings.  "Plaintiffs
need only provide some 'modest' evidence beyond pure speculation
that Defendant's alleged policy affected other employees."  Id.
(quoting Smith v. Sovereign, No. 03-2420, 2003 U.S. Dist. LEXIS
21010, at *10, 2003 WL 2270173 (E.D. Pa Nov. 13, 2003)).  As
such, we grant conditional certification and will revisit this
certification at the second stage of the inquiry at the close of
discovery.


**II. Cortes Plaintiffs' Intervention in Plaintiff's Motion for
Conditional Certification**

On April 30, 2009, upon motion, this Court allowed

20

intervention in the instant action by Plaintiffs of an action filed in the Southern District of New York, Cortes v. Foot Locker, No. 06-cv-1046, due to the potential interest that Cortes Plaintiffs may have in the instant case as putative class members.  Cortes Plaintiffs wished to intervene in order to object to their inclusion in the putative class.  Having allowed intervention based on their perspective interest, this Court now assesses the Cortes Plaintiffs' request in light of the conditional certification of the FLSA claim.

We find that, upon conditionally certifying the putative class, it would be inappropriate for this Court to exclude the New York Plaintiffs from the now conditionally certified FLSA action.  Cortes Plaintiffs' Certification Motion is now pending before the Southern District of New York and we decline to attempt to anticipate that Court's decision or conceivably leave New York Plaintiffs excluded from a nationwide class action as whole.[5]  Despite the Cortes Plaintiffs' concern that their opt-in plaintiffs could ultimately be litigating their FLSA and state law claims in two fora, we cannot whole-cloth exclude all New York Plaintiffs from notice in the instant action based on possible future certification of both federal and state classes in New York.  Additionally, as FLSA actions are opt-in, not opt-

---

[5]One of many possible scenarios would include a denial of conditional certification of the Cortes class by the New York court, leaving New York plaintiffs excluded from the present action and, conceivably, a party to no other action.

out, actions, it would be further attenuated to exclude them from
nationwide notice based on a potential interest or harm that may
come if they *affirmatively* choose to opt-in to the present
action.  Finally, this Court can find no precedent for such an
action in conditional certifications.  While the <u>Cortes</u> action
was filed prior to the instant case, the first-to-file doctrine
advanced by <u>Cortes</u> Plaintiffs applies in motions to dismiss, stay
or transfer and does not apply here to simply exclude certain
plaintiffs from a class.  <u>Allianz Life Ins. Co. of N. Am. v.
Estate of Bleich</u>, No. 08-668, 2008 U.S. Dist. LEXIS 90720, at *7,
2008 WL 4852683 (D.N.J. Nov. 6, 2008) (citing <u>Keating Fibre
Intern., Inc. v. Weyerhaeuser Co.</u>, 416 F. Supp. 2d 1048,
1052-1053 (E.D. Pa. 2006) ("Consistent with these principles, the
first-to-file rule gives courts the power to stay, enjoin, or
transfer a later-filed case.")).  Thus, we decline to exclude
<u>Cortes</u> Plaintiffs from receiving notice in this conditionally
certified collective action.


## III. Form of the Notice

     Plaintiff has proposed a Notice and Consent to Sue Form in
its Motion for Conditional Collective Certification and has
requested that this Notice be mailed to all putative plaintiffs
and be posted at the Defendant's store locations.  Plaintiff has
proposed 120 days for putative class members to opt-in to the

22

action.  Defendant objects to the posting of the Notice in work
locations, the wording in the proposed Notice, and the period of
time proposed by Plaintiff.  Pursuant to the district court's
discretion to facilitate notice, we oversee the Notice and
address the Defendant's objections in turn.  See Hoffman-La
Roche, Inc., 493 U.S. at 169.

Plaintiff has requested that the Notice be posted in work
locations to ensure that Notice is effective; while Defendants
argue that this Notice would create an undue interruption in the
workplace and that Plaintiff had supplied little support for this
request.  Posting Notice in the workplace of the putative class
members strikes this Court as an effective and efficient way to
ensure that potential class members are aware of the litigation.
Defendant has not detailed how a Notice in an employee section of
the workplace would be disruptive to the staff and we do not find
that such a Notice would be unduly disruptive.  Further, outside
of mailing Notice directly to the putative class members,
Plaintiff has not suggested any other forms of Notice.  Thus, the
mailings and the posting of the Notice in a conspicuous place in
an employee area of Defendant's store locations provides a
balance of efficient and effective Notice dissemination.  See
Sherrill v. Sutherland Global Servs., Inc., 487 F. Supp. 2d 344,
351 (W.D.N.Y 2007) (finding posting and mailings of opt-in
notices and forms to be appropriate).

23

Additionally, Plaintiff has requested a 120-day time period for putative class members to opt-in to the present action, while Defendant finds this period unreasonable and suggests a 30 - 40 day period.  We find that, in light of the potential size of the putative class and the number of persons to be contacted, a 90-day period is reasonable.  This time period will allow potential class members to review the Notice and, if they so choose, to file a Consent To Sue form and opt-in to the action.

Finally, parties make a variety of arguments as to the exact wording that should be used in the Notice itself.  In some instances, the parties have demonstrated a willingness to amend the proposed Notice to assuage the opposing party's concerns. Accordingly, we direct the parties to meet and confer as to the wording and form of the Notice and present a joint, proposed Notice to this Court within thirty (30) days of entry date of the Order.

## IV. Inherent Incompatibility: Federal and State Law claims

Plaintiff has simultaneously moved for FLSA collective action and class action certification pursuant to Fed. R. Civ. P 23, creating a potential conflict and implicating the question of whether this Court should exercise supplemental jurisdiction over the state law claims.  While neither party has addressed the potential incompatibility of the these Motions in their

24

respective briefs, we feel compelled to address it at this
juncture.   Thus, we address the issue *sua sponte* based on the
jurisdictional ability of the simultaneous "classes" to move
forward together as brought squarely to this Court on the dual-
Motions for certification.

The incompatibility of federal and state parallel class
actions has been raised numerous times by district courts in our
Circuit, but the issue, in the instant carnation, has never been
addressed squarely by the Third Circuit.  However, the Third
Circuit has provided direction in a related case where state law
class claims were brought under supplemental jurisdiction.   In
its holding in De Ascencio, an off-the-clock hours case somewhat
factually similar to the present one, the Third Circuit held that
due to the complexities of the state law claims under the
Pennsylvania Wage Payment and Collection Act and the large
disparities in the number of state plaintiffs to federal ones,
the state law claims predominated over the federal claims and,
pursuant to Section 1367(c)(2), dismissed the state law claims.
De Ascencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003).

While De Ascencio provides direction, it does not address
the question now before this Court.  In the instant case, the
federal and state law claims greatly overlap and Plaintiff has
requested certification of both "classes" simultaneously.  Both
the federal and state claims involve the same factual allegations

25

and would appear to necessitate the same discovery, testimony, witnesses and similar analysis by the court.  See Hickton v. Enter. Rent-A-Car Co., No. 07-1687, 2008 U.S. Dist. LEXIS 86604, at *9, 2008 WL 4279818 (W.D. Pa. Sept. 12, 2008).  Unlike the claims in De Ascencio, the state law claims here are not, on their face, more overtly complex than the federal ones and, at this stage, would appear to require a similar amount of proof and testimony.  Additionally, the putative class proposed herein is potentially much larger than the statewide class.  Thus, the predomination concerns identified in De Ascencio are not, at this time, present in the instant case.  The procedural posture of the claims in De Ascencio was also distinct, in that the Court in De Ascencio had already granted conditional certification and was concerned that the Plaintiffs were moving for class certification to use the state law class opt-out action as a "second line of attack" when the federal claims "yielded a smaller than desired federal class."  Id. at 312.  However, in the instant case, the Court is faced with certification of both the federal and state claims simultaneously.  Hence, though Plaintiff has pled the state law claims pursuant to supplemental jurisdiction, this Court is faced with an "inherent incompatibility" issue as to the simultaneous certification motions, as opposed to the distinct

26

predominance problem articulated in <u>De Ascensio</u>.[6]

Since <u>De Ascencio</u>, district courts in this Circuit have struggled to ascertain whether, in parallel actions where the state claims do not predominate over the federal ones, the court should maintain jurisdiction over both claims or dismiss the state law claims due to the possibility of inherent incompatibility between opt-in and opt-out classes.  <u>See</u> <u>Woodward v. FedEx Freight D., Inc.</u>, 250 F.R.D. 178 (M.D. Pa. 2008) (finding that it could not exercise jurisdiction over federal and state claims due to inherent incompatibility in opt-in and opt-out classes); <u>Burkhart-Deal v. Citifinancial, Inc.</u>, No. 07-1747, 2008 U.S. Dist. LEXIS 44469, at *6-10, 2008 WL 2357735 (W.D. Pa. June 5, 2008) (agreeing with the Court in <u>Ellis</u> and finding that opt-in and opt-out actions are incompatible); <u>Ellis v. Edward Jones & Co.</u>, 527 F. Supp. 2d 439, 448 (W.D. Pa. 2007) (finding, in its second case of this kind, that the class procedures set out in the FLSA were incompatible with the procedures in Fed. R. Civ. P. 23); <u>Brothers v. Portage Nat'l Bank</u>, No. 06-94, 2007 U.S. Dist. LEXIS 24326, at *23, 2007 WL 965835, at *7 (W.D. Pa March 29, 2007) (same); <u>Otto v. Pocono Health System</u>, 457 F. Supp. 2d

---

[6]Plaintiff has not averred in his Complaint that original jurisdiction exists over the state law claims and has asserted jurisdiction for its state law claims under supplemental jurisdiction pursuant to 28 U.S.C. § 1367 *only*. As the reasons laid out in <u>De Ascensio</u> for denying supplemental jurisdiction pursuant to § 1367(c)(2) are not present here, this Court moved to additional jurisdictional analysis.

522, 524 n. 1 (M.D. Pa. 2006) (holding that overlapping federal and state claims would defeat Congressional intent); <u>Herring v. Hewitt Assocs.</u>, No. 06-267, 2006 U.S. Dist. LEXIS 56189, at *5, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006) (holding the opt-in and opt-out notice schemes incompatible); <u>Himmelman v. Cont'l Cas. Co.</u>, no. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5, 2006 WL 2347873, at *2 (D.N.J. Aug. 11, 2006) (same); <u>Aquilino v. Home Depot U.S.A.</u>, No. 04-4100, 2006 U.S. Dist. LEXIS 48554, at *11-12, 2006 WL 2023539, at *3-4 (D.N.J. Huly 17, 2006) (holding that Congress's intent in establishing the opt-in scheme for FLSA cases would be defeated by allowing the dual-classes to proceed).[7],[8] As has been aptly laid out by these courts, the incompatibility emanates from Congress's intent for FLSA actions to require plaintiffs to opt-in to the collective action, thereby seeking to "limit private FLSA claims to those affirmatively asserted by affected employees 'in their own right,' and to 'free[] employers of the burden of representative actions.'"

--------------------------

[7] <u>But</u> <u>see</u>, <u>Hickton v. Enterprise Rent-A-Car Co.</u>, No. 07-1687, 2008 U.S. Dist. LEXIS 86604, at *19-22, 2008 WL 4279818 (W.D. Pa. Sept. 12, 2008) (allowing federal and state class claims to move forward despite opt-in/opt-out compatibility concerns).  It should be noted that while the court in <u>Hickton</u> allowed a lawsuit involving federal and state class claims to proceed, the state claims in that matter were alleged to have jurisdiction in federal court pursuant to CAFA <i>and</i> supplemental jurisdiction.  That court explicitly held that, "[i]n the event that it is later determined that the court does not have original jurisdiction under CAFA of th[e state] claim, the court would decline to exercise supplemental jurisdiction and the claim would be dismissed, without prejudice."

[8] This Court acknowledges that district courts outside of the Third Circuit do hold, in certain instances, that the two schemes do not conflict with each other and instead preserve judicial economy.  <u>See</u>, <u>e.g.</u>, <u>Ansoumana v. Gristede's Operating Corp.</u>, 201 F.R.D. 81 (S.D.N.Y. 2001).

_Ellis_, 527 F. Supp. 2d at 451 (quoting _Hoffman-La Roche_, 493 U.S.
at 173).  Allowing a Rule 23 opt-out action to proceed
simultaneously in the same lawsuit would allow plaintiffs to
"circumvent" the requirement of the FLSA action by bringing
other, unnamed Plaintiffs into the lawsuit.  _Ellis_, 527 F. Supp.
2d at 451-52 (citing _Otto_, 457 F. Supp. 2d at 523) (internal
quotations omitted).  This Court has previously addressed the
issue in another case involving FLSA claims and Pennsylvania
labor claims, holding that "FLSA collective actions are
inherently incompatible with Rule 23 state-law class actions, and
thus cannot be brought simultaneously in federal court under one
lawsuit." _Ramsey v. Ryan Beck_, No. 07-1747, 2007 U.S. Dist.
LEXIS 56129, at *12 (E.D. Pa. August 2, 2007) (Joyner, J.).
While the facts and allegations in the present case are distinct
from those in _Ramsey_, we find that the incompatibility between
the opt-in and opt-out class rubrics remain and that "permitting
a FLSA collective action to be litigated with a Rule 23 state-law
class action would 'nullify Congress's intent in crafting [FLSA]
§216(b) and eviscerate the purpose of § 216(b)'s opt-in
requirement.'" _Id._ at *6 (quoting _Otto_, 457 F. Supp. 2d at 524
n. 1).  Thus, Plaintiff's state law claims cannot proceed in so
far as they overlap with their FLSA claims.

    However, as the parties have not raised the issue in their
present Motions, it is unclear from the face of the Complaint

whether there are any state claims that are wholly distinct from
federal claims.  If such a state claim exists, it could
conceivably go forward with the FLSA collective action. <u>Woodward</u>,
250 F.R.D. at 189 ("Where the state law claim is brought to
vindicate rights enjoying no similar protection under the FLSA,
the FLSA is not implicated."); <u>Brothers</u>, 2007 U.S. Dist. LEXIS
24326, at *18-19 (finding that "Rule 23 and § 216(b) are only
incompatible to the extent that Plaintiff's state-law claims
coincide with the FLSA action" and allowing plaintiff to pursue
an opt-out class for a claim not covered under FLSA as long as
such claims did not predominate over the federal claims).  At
this stage in the lawsuit and without briefing from the parties,
it would be premature for the Court to automatically separate all
the claims in the Complaint and dismiss the state law claims as
inherently incompatible because there may be a state law claim
that is distinct from the FLSA counterpart.  Thus, this Court
will revisit the Pennsylvania claims at the Motion to Dismiss
stage in order to allow sufficient investigation and briefing as
to distinct state claims that could proceed.  However, as the
instant Motion for Class Certification pursuant to Fed. R. Civ.
P. 23 seeks to certify the Pennsylvania class for state claims
that, at least to a certain extent, overlap with the federal FLSA
claims, we dismiss the motion without prejudice to Plaintiff's
right to refile once the extent of the incompatibility due to

overlap becomes clear.

An appropriate Order follows.

ENTERED

SEP 15 2009

CLERK OF COURT

9/15/09 mail.
Broach
Smith

31